AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Kansas



FILED
U.S. District Court
District of Kansas
NOV 21 2019
Clerk, U.S. District Court
By _____ Deputy Clerk

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with: FACEBOOK USER IDS<br>100009837240439, 100017229406075, AND 100040682287533<br>further described on Attachment A. | )<br>)<br>)<br>)<br>)   Case No. 19-MJ-*6196*-01-KGG<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Information associated with: FACEBOOK USER IDS 100009837240439, 100017229406075, AND 100040682287533 further described on Attachment A.

located in the _____Northern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

❑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1591 | Sex Trafficking of a Child |

The application is based on these facts:

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ian Ensley, SA, Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Nov. 21, 2019

_____
*Judge's signature*

City and state: Wichita, Kansas

Honorable Kenneth G. Gale, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
FACEBOOK USER IDS 100009837240439,
100017229406075, AND 100040682287533
THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK INC.

Case No. 19-M-06196-01-KGG

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ian D. Ensley, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain Facebook user ID that is stored at premises owned,

maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking

company headquartered in Menlo Park, California.  The information to be searched is described

in the following paragraphs and in Attachment A.  This affidavit is made in support of an

application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to

require Facebook to disclose to the government records and other information in its possession,

pertaining to the subscriber(s) or customer(s) associated with the user ID(s).

2.      I am employed as a Special Agent with the Federal Bureau of Investigation

(FBI). I have been employed as a Special Agent since January 6, 2019. I am currently assigned to

the Wichita, Kansas, Resident Agency, Kansas City Division. Prior to service with the FBI, I was

a Commissioned Officer in the United States Army. As a Special Agent of the FBI, I am

authorized to investigate violations of laws of the United States, and I am a law enforcement

officer with authority to execute arrest, search, and seizure warrants under the authority of the

United States. I have participated in a wide variety of criminal investigations, to included crimes against children, child exploitation, bank robbery, drug violations, and other violent and non-violent Federal crimes. Additionally, I have participated in the preparation and/or execution of many searches and arrests.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of violation of Title 18, United States Code (U.S.C.) § 1591, Sex Trafficking of children, have been committed by Kelly Grounds and Taylor Kinsey.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5.      Minor Victim (MV) was born July 2002. At all times described herein, MV was a minor less than 18 years of age.

6.      In August 2019, MV was residing in Dickinson County, Kansas, as part of a placement through St. Francis and the Kansas Department of Children and Families (DCF).

7.      On September 23, 2019, MV left her placement (discussed below).

8.      On September 26, 2019, MV sent a text message to DCF caseworker Lexandria Vrana that revealed her whereabouts. Law enforcement found MV in a Days Inn in Oklahoma City, with Taylor Kinsey.

**Interview of Minor Victim**

2

9.     MV was interviewed and disclosed that, on or about the beginning of August, 2019, Kelly Grounds contacted MV via Facebook Messenger. MV knew Kelly Grounds from a prior placement. Grounds asked MV to come to Wichita to make money, which MV understood to mean engaging in commercial sex act. Grounds picked MV up from MV's placement and drove MV to Wichita.

10.    MV advised, once in Wichita, Grounds took pictures of MV and posted them on a website known to facilitate the commercial sex industry. According to MV, Grounds rented a room at the Red Roof Inn in Wichita and used MV's phone to arrange commercial sex acts. MV described performing approximately 6-7 sex acts with commercial sex buyers in the hotel room, with half of the money going to Grounds. Grounds would make initial telephone contact with the buyers of commercial sex and then turn the phone over to the MV in order to complete the transaction. Grounds instructed MV on what to say and what not to say.

11.    According to MV, an acquaintance of Grounds, Taylor Kinsey, came to the room at the Red Roof Inn. At a point when Grounds was out of the room, Kinsey indicated Grounds was not being nice to MV and that Kinsey would be nicer to MV. Kinsey asked MV to go with her to another hotel. MV left with Kinsey to another hotel.

12.    On or about September 25, 2019, MV gave the rest of the money she had made from commercial sex acts to Kinsey. Kinsey then asked MV if she wanted a "real pimp," and to make some real money by going to Oklahoma and Texas. MV agreed to travel with Kinsey.

13.    On or about September 26, 2019, Kinsey took MV to the Days Inn in Oklahoma City. From there, MV contacted the DCF Child Advocate Lexandria Vrana, her therapist Sarah, and Wichita Police Department Detective Latavia Allen.

**Taylor Kinsey's phone and Facebook ID**

3

14.     At the Days Inn, Oklahoma City Police Department secured MV, detained Kinsey, and subsequently obtained a search warrant for both MV's and Kinsey's phone.

15.     Pursuant to a search warrant, it was discovered Taylor Kinsey utilized the Facebook App on her phone, as evinced by several screen-captures in the phone's gallery of Facebook Messenger messages and Facebook Messenger contacts.

16.     Contained on Kinsey's phone were text messages between Grounds and Kinsey from September 21, 2019 where Grounds tells Kinsey about MV. On messages dated September 24, 2019 to September 25, 2019, there are numerous messages regarding "dates" for the MV and talk of MV bringing in money.

17.     The images Grounds took of MV are also located on Kinsey's phone in the photo gallery, saved to the gallery on September 26, 2019.

18.     During an interview with Taylor Kinsey on October 11, 2019, Taylor stated that she utilized Facebook under the username Ava Love. Account information saved to her phone confirmed Facebook User ID: 100040682287533, with username Ava Dawn Love, and avadawn.love.92. Publically available search of the account showed the account contained a profile picture of Taylor Kinsey.

**Kelly Ground's phone and Facebook ID**

19.     After the interview of MV, Wichita Police Department (WPD) obtained a warrant for the arrest of Kelly Grounds for aggravated human trafficking, a violation of KSA 21-5426. On September 28, 2019, WPD officers arrested Grounds.

20.     Grounds consented to a search of her phone. Pursuant to the consent search, investigators confirmed Grounds utilized the Facebook App on her phone. More specifically,

Kelly Grounds operated Facebook User ID: 100009837240439 under username Kelly Grounds. Grounds' account was stored under user accounts within Grounds' phone.

21.     Within the internet history on the phone were records of the steps taken to post the ad associated with the MV to the website known to facilitate the commercial sex industry.

22.     Contained within the photo gallery of the phone were the photos used on the ad associated with the MV.

23.     Given the acquaintance of Grounds and Kinsey, their communications, and their mutual involvement in commercial sex/sex trafficking, I believe it more likely than not that Grounds and Kinsey used their Facebook accounts to converse directly about the juvenile victim or converse with others about sex trafficking of MV.

### MV's Facebook ID

24.     The MV operates Facebook User ID: 100017229406075 under username Esse Arc.

### Preservation Requests

25.     Preservation requests were served to Facebook on September 27, 2019 under Case #3681554 for both subject accounts as well as the account of the minor victim.

### Background on Facebook

26.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

27.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.  In the present investigation, this information can be useful to confirm who is using the account, and what devices or other accounts may be associated with that person.

28.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays. In the present investigation, this information can be useful to identify who may confirm who is using the account and to identify potential co-conspirators and individuals with knowledge of the criminal activities under investigation.

29.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these

privacy settings.  Facebook accounts also include other account settings that users can adjust to

control, for example, the types of notifications they receive from Facebook. Again, in the present

investigation, this information can be useful to identify potential co-conspirators and individuals

with knowledge of the criminal activities under investigation, and to show the user's knowledge

and intent related to the criminal activities under investigation.

30.     Facebook users can create profiles that include photographs, lists of personal

interests, and other information.  Facebook users can also post "status" updates about their

whereabouts and actions.  Facebook users can also post information about upcoming "events,"

such as social occasions, by listing the event's time, location, host, and guest list.  In addition,

Facebook users can "check in" to particular locations or add their geographic locations to their

Facebook posts, thereby revealing their geographic locations at particular dates and times.  A

particular user's profile page also includes a "Wall," which is a space where the user and his or

her "Friends" can post messages, attachments, and links that will typically be visible to anyone

who can view the user's profile. In the present investigation, these areas of the Facebook account

may reveal information about who is using the account and where they are at given point in time.

31.     Facebook allows users to upload photos and videos, which may include any

metadata such as location that the user transmitted when s/he uploaded the photo or video.  It

also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.

When a user is tagged in a photo or video, he or she receives a notification of the tag and a link

to see the photo or video.  For Facebook's purposes, the photos and videos associated with a

user's account will include all photos and videos uploaded by that user that have not been

deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

In the present investigation, this information may reveal information about who is using the

account, what devices were associated with that user, and where they were at given point in time, and may include the photographs associated with the advertisements referenced above.

32.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call. In the present investigation, the messaging areas are likely to contain evidence associated with the crimes under investigation, as well as confirming the identities of involved individuals related to the crimes under investigation.

33.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace. In the present case, this area may contain information relating to advertisements for commercial sex.

34.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so. Again, as related to the present

8

investigation, this information may confirm who accessed or used the account, and where the user was located at the time of the access.

35.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Again, as related to the present investigation, this information may confirm who accessed or used the account, and may also identify financial accounts that may have been used in relation to the commercial sex transactions.

36.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be

9

evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook

account activity can show how and when the account was accessed or used.  For example, as

described herein, Facebook logs the Internet Protocol (IP) addresses from which users access

their accounts along with the time and date.  By determining the physical location associated

with the logged IP addresses, investigators can understand the chronological and geographic

context of the account access and use relating to the crime under investigation.  Such information

allows investigators to understand the geographic and chronological context of Facebook access,

use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-

location into some of its services.  Geo-location allows, for example, users to "tag" their location

in posts and Facebook "friends" to locate each other.  This geographic and timeline information

may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account

activity may provide relevant insight into the Facebook account owner's state of mind as it

relates to the offense under investigation.  For example, information on the Facebook account

may indicate the owner's motive and intent to commit a crime (e.g., information indicating a

plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort

to conceal evidence from law enforcement).

   37. Therefore, the computers of Facebook are likely to contain all the material

described above, including stored electronic communications and information concerning

subscribers and their use of Facebook, such as account access information, transaction

information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

   38. I anticipate executing this warrant under the Electronic Communications Privacy

Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant

to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

39.     Based on the forgoing, I request that the Court issue the proposed search warrant.

40.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Facebook.  Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

41.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is a district court of the United States  in the district of Kansas that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

42.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

43.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

11

Respectfully submitted,

Ian D. Ensley
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ___Nov. 21,_____, 2019.

THE HONORABLE KENNETH G. GALE
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the accounts of Facebook User IDs

**100009837240439,**

**100017229406075, and**

**100040682287533,**

that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a

company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information provided to Facebook, during the registration process or at any time thereafter;

(b)    All profile information for the account, including "Status" updates, "News Feed," "Wall" postings, "Event" postings, and "Check ins" and other location information;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them **August 1, 2019 to present**, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and video;

(d)    All contacts or "friends" of the account, including pending or rejected "friend" requests, and "friends lists," including the privacy settings associated with such lists;

(e)    All groups and networks of which the user is a member;

(f)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities **August 1, 2019 to present**;

(g)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(h)     All other records and contents of communications and messages made or received by the user **August 1, 2019 to present**, including all Messenger activity, private messages, chat history, and video/voice calling history;

(i)     All IP logs, including all records of the IP addresses that logged into the account;

(j)     All information about the user's access and use of Facebook Marketplace **August 1, 2019 to present**;

(k)     The types of service utilized by the user;

(l)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(m)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(n)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

2

Facebook is hereby ordered to disclose the above information to the government within

**14 DAYS** of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 USC § 1591 Sex Trafficking of Children, involving Taylor Kinsey and Kelly Grounds since August 1, 2019, including, for each user ID identified on Attachment A, information pertaining to the following matters:

     (a)  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

     (b)  Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

     (c)  Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

     (d)  Communications pertaining to commercial sex acts, including but not limited to communications involving contraception, scheduling, pricing, methods of payment, directions, and travel;

     (e)  Communications between minor victim and the subjects of investigation, as identified and discussed in the attached affidavit;

     (f)  Communications about minor victim between the subjects of investigation, as identified and discussed in the attached affidavit, or with other unknown individuals.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and

instrumentalities described in this warrant.  The review of this electronic data may be conducted

by any government personnel assisting in the investigation, who may include, in addition to law

enforcement officers and agents, attorneys for the government, attorney support staff, and

technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed

electronic data to the custody and control of attorneys for the government and their support staff

for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Facebook, and my title is

_____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Facebook.  The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b.      such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                            Signature